FILED

2009 Jan-09  PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | |
|---|---|
| JAMES LEONARD "BUD" ROMINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:07-cv-00122-CLS |
| | ) |
| TOWN OF ROGERSVILLE, ALABAMA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This civil rights action arises out of the January 19, 2005 arrest of plaintiff, James Leonard "Bud" Romine, for driving while under the influence of alcohol.[1] Plaintiff's Complaint names as defendants the Town of Rogersville, Alabama, Rogersville's Mayor and Chief of Police, and Rogersville Police Officers Scott Quinnelly and Kelly Pitts.[2] Plaintiff claims that Officers Quinnelly and Pitts did not

---

[1] *See* doc. no. 41 (Quinnelly Brief in Support of Summary Judgment), Statement of Undisputed Facts, ¶ 2.

[2] *See* doc. no. 1 (Complaint), ¶¶ 2-6. The Mayor of Rogersville, Harold Chandler, and Police Chief Ty Barrett have moved for summary judgment as to all claims asserted against them. *See* doc. no. 38 (Motion for Summary Judgment by the Town of Rogersville, Kelly Pitts, Ty Barrett, and Harold Chandler). In response to these defendants' joint motion for summary judgment, plaintiff "agrees to the dismissal of Barrett and Chandler." Doc. no. 44 (Plaintiff's Response to Defendants' Motions for Summary Judgment), at 2. After a defendant has answered a complaint or served on the plaintiff a motion for summary judgment, a plaintiff can no longer dismiss his claims against that defendant without leave of court. *See* Fed. R. Civ. P. 41(a)(1)(A)(i) (providing that a plaintiff may voluntarily dismiss an action without a court order "before the opposing party serves either an answer or a motion for summary judgment"). The court, therefore, construes plaintiff's "agreement" as a motion to dismiss defendants Barrett and Chandler, and finds that the request is due to be granted. All claims asserted against Mayor Chandler and Police Chief Barrett will be dismissed by

have the authority (or, as plaintiff puts it, the "jurisdiction") to detain and arrest him, resulting in his unlawful arrest claim under the Fourth and Fourteenth Amendments to the United States Constitution (Count I); and, that the officers employed unreasonable force when arresting him, resulting in his Fourth and Fourteenth Amendment excessive force claim (Count II). In additional to those claims based on federal law and asserted under 42 U.S.C. § 1983, plaintiff pleads supplemental state-law claims for assault and battery against Officers Quinnelly and Pitts (Count III).[3]

The case currently is before the court on defendants' motions for summary judgment.[4]  Upon consideration of the record and briefs of counsel, the court concludes that defendants' motions for summary judgment are due to be granted, but only as to plaintiff's federal claims.

## I.  SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 advises that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  In other

---

a separate order entered contemporaneously herewith.

[3] Doc. no. 1 (Complaint), at ¶¶ 7-37.

[4] Doc. no. 38 (Motion for Summary Judgment by the Town of Rogersville, Kelly Pitts, Ty Barrett, and Harold Chandler); doc. no. 40 (Quinnelly Motion for Summary Judgment).

[5] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis

words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a

---

supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

jury or whether it is so one-sided that one party must prevail as a matter of law").

The summary judgment requirement to "review all evidence and make all reasonable inferences in favor of the party opposing summary judgment," *Chapman*, 229 F.3d at 1023, takes on even greater force when, in a case founded upon 42 U.S.C. § 1983, a state governmental official files a Rule 56 motion interposing the affirmative defense of qualified immunity.  In such cases, the court *normally* must answer the legal question of whether the governmental official is entitled to qualified immunity under *the plaintiff's* version of the facts.  *See*, *e.g.*, *Saucier v. Katz*, 533 U.S. 204, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question:  *Taken in the light most favorable to the party asserting the injury*, do the facts alleged show the officer's conduct violated a constitutional right?") (emphasis supplied).

This is not the normal case, however.

Instead, there are videotape and accompanying audio recordings of the interaction between plaintiff and Officers Quinnelly and Pitts, beginning with the officers' first sighting of plaintiff's vehicle, and ending in the garage at the Lauderdale County Detention Facility in Florence, Alabama.  Consequently, where the plaintiff's version of events differs from the video and recorded audio evidence of record, the court will construe the facts as they are objectively revealed by the

video and audio evidence. *See*, *e.g.*, *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Beshers v. Harrison*, 495 F.3d 1260, 1262 n.1 (11th Cir. 2007) (refusing to adopt an appellant's version of facts when reviewing a district court's order granting summary judgment in favor of the defendant police officers on the issue of qualified immunity in an excessive force case because the appellant's factual allegations were "clearly contradicted" by videotape evidence "such that no reasonable jury could believe it").

In addition, plaintiff implies throughout his brief in response to defendants' motions for summary judgment that this court is obligated to construe the "facts" in a light most favorable to him, regardless of whether there is evidentiary support for his factual allegations. That implication is an incorrect statement of the law. *See*, *e.g.*, Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; *rather*, *its response must* — by affidavits or as otherwise provided in this rule — *set out specific facts* showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be

entered against that party.") (emphasis supplied).[6]  Therefore, where plaintiff disputed

the defendants' statements of fact, but failed to cite evidence of record that

demonstrates a genuine issue of material fact, and there is, in actuality, no evidence

of record to support plaintiff's contestation, the court will not accord plaintiff's

unsubstantiated allegations any weight.

## II.  SUMMARY OF RELEVANT FACTS

On the night of January 19, 2005, Rogersville Police Officers Scott Quinnelly

and Kelly Pitts were patrolling an area located outside the town limits of Rogersville,

but within the county limits of Lauderdale County, Alabama.[7]  The officers observed

an automobile that was proceeding down a public highway in an erratic manner.[8]  The

---

[6] *See also* doc. no. 13 (N. D. Ala. Uniform Initial Order), Appendix II (Summary Judgment Requirements), ¶ D(2)(a) at 16 ("Any statements of fact that are disputed by the non-moving party *must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based*.") (emphasis supplied).

[7] *See* doc. no. 41 (Quinnelly Brief in Support of Summary Judgment), Statement of Undisputed Facts, at ¶ 2.  Plaintiff alleges in the Complaint that his arrest was unlawful, in part, because the officers were operating outside their "jurisdiction" at the time of his arrest.  *See* doc. no. 1 (Complaint), at ¶¶ 8-12.  In raising this allegation, however, plaintiff ignores the fact that Alabama law "gives a police officer of any incorporated city or town the authority to make arrests anywhere within the limits of the county."  *See* Ala. Code § 15-10-1 (1975) (1995 Replacement Vol.) ("An arrest may be made, under a warrant or without a warrant, by any . . . policeman of any incorporated city or town within the limits of the county.").  It is undisputed that plaintiff's arrest was made within the geographic boundaries of Lauderdale County, Alabama, which, in turn, encompasses the town limits of Rogersville, Alabama.  At the time of plaintiff's arrest, Rogersville employed Officer Quinnelly as a full-time police officer, and Officer Pitts served as a "reserve," or volunteer, police officer.  Accordingly, under Alabama law, Officers Quinnelly and Pitts possessed the legal authority to arrest plaintiff outside of the town limits of Rogersville, but within the borders of Lauderdale County, Alabama.  Plaintiff's arrest, therefore, was not unlawful on the basis that the arresting officers were operating outside their authority or "jurisdiction."

[8] *See* doc. no. 39-3 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Exhibit 3 (Video and Audio Recordings).

officers pursued the vehicle for approximately two minutes, during which time the automobile ran a stop sign, inexplicably stopped within an intersection, and drifted over both the center-line and shoulder of the highway.[9]  Suspecting that the driver of the vehicle was under the influence of alcohol or some other substance, the officers activated their police cruiser's siren and emergency lights to indicate that the driver should stop his automobile.[10]  Plaintiff complied by pulling his vehicle to the side of the road, following which the officers approached him, and initiated conversation.[11]

From the start, plaintiff was combative and uncooperative.[12]

He refused to comply with the officers' commands, beginning with Officer Quinnelly's request that plaintiff show his driver's license.[13]  After plaintiff exited his vehicle, he continued to argue with, and physically resist the officers.[14]  Specifically, plaintiff would not remove his hands from his pockets after being directed to do so, and struggled against the officers' attempts to search his person for weapons.[15]

It is undisputed that plaintiff was driving while intoxicated.  Plaintiff concedes that the video and audio recordings of his conduct clearly reveal that he was

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13]*Id.*

[14] *See* doc. no. 39-3 ('Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Exhibit 3 (Video and Audio Recordings).

[15] *Id.*

inebriated.[16]  Plaintiff admitted to Officers Quinnelly and Pitts that he had consumed

alcohol prior to driving his vehicle, but he just did not know how much.[17]  The police

officers observed several open containers of beer and an open bottle of wine in

plaintiff's automobile.[18]  Despite these facts, plaintiff refused the officers' request that

he submit to field sobriety tests or to a Breathalyzer analysis of his blood-alcohol

content, following which the officers informed plaintiff that he was under arrest.[19]

Plaintiff resisted the officers' attempts to secure him in handcuffs.[20]  The

officers ordered plaintiff to remain still, but he refused to do so.  The officers then

used force to subdue him, and place him in handcuffs.[21]  This "force" consisted of the

officers placing their hands on plaintiff's body, turning him to face away from them,

and forcing plaintiff's arms behind his back.[22]  Plaintiff remained standing throughout

this event, and does not allege that this force was either excessive or unreasonable.[23]

After plaintiff was secured in handcuffs, Officer Quinnelly — on *ten* separate

---

[16] *Id.  See also* doc. no. 38 (Motion for Summary Judgment by the Town of Rogersville *et al.*), Statement of Undisputed Facts, at ¶ 12; doc. no. 44 (Plaintiff's Response to Defendants' Motions for Summary Judgment), at 3.

[17] *See* doc. no. 39-3 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Exhibit 3 (Video and Audio Recordings).

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *See* doc. no. 39-3 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Exhibit 3 (Video and Audio Recordings).

[23] *Id.*

occasions — asked plaintiff to get into the backseat of the police car, but plaintiff refused.[24]  Officer Quinnelly finally took hold of plaintiff, and forced him to enter the police car.[25]  Plaintiff testified at his deposition that he "wasn't really hurt" by this action.[26]

Upon arriving at the Lauderdale County Detention Facility in Florence, Alabama, plaintiff was reluctant to exit the police car that he had, ten times, refused to enter.[27]  Officer Quinnelly offered to assist plaintiff from the vehicle, but plaintiff declined.[28]  Ultimately, however, both Officers Quinnelly and Pitts physically removed plaintiff from the police cruiser.[29]

While plaintiff was being escorted by the officers from the garage area into the jail facility, plaintiff was ordered by Officer Pitts not to "jerk away."[30]  Shortly after that command, and while plaintiff and the officers were still in the garage area,

---

[24] *See* doc. no. 41 (Quinnelly Brief in Support of Summary Judgment), Statement of Undisputed Facts ¶ 4, at 2.  *See also* doc. no. 39-3 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Exhibit 3 (Video and Audio Recordings).

[25] *Id.*

[26] *Id.* (citing doc. no. 39-6, Deposition of James Leonard "Bud" Romaine, at 58-59).

[27] *See* doc. no. 39-3 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Exhibit 3 (Video and Audio Recordings).

[28] *Id.*

[29] *Id.*

[30] *Id.*  There are video and audio recordings of all events leading up this point.  Unfortunately, both the video and audio recordings were terminated prior to plaintiff being transported out of the garage area and into the jail facility.  It is during this transfer in the jailhouse garage that plaintiff alleges he was pushed into a wall and beaten by Officers Quinnelly and Pitts, a fact that is in dispute.

plaintiff refused the officers' directive that he submit to a "balloon test."[31]  Following

that refusal, and while plaintiff was restrained in handcuffs, he was "shoved" into a

wall, causing his glasses to fall from his face.[32]  Immediately after being pushed into

the wall, plaintiff was turned to face the officers, who beat him about his torso with

their fists.[33]  Plaintiff is unsure whether he was "shoved" and beaten by one or both

officers, and he does not know how many times he was punched.[34]  Plaintiff did not

fall down as a result of this incident, nor did he report it to the jail's personnel until

the day following his arrest.

Plaintiff did not develop any bruises; indeed, there was no physical indication

that he was beaten by the officers, and there is no independent medical evidence

verifying any injuries inflicted by the police officers.[35]  Moreover, there were no

---

[31] *See* doc. no. 39-6 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Deposition of James Leonard "Bud" Romine, at 61.  Plaintiff testified at his deposition that the police officers asked him to "blow up the balloon test" immediately before shoving him into a wall.  *Id.*  Plaintiff is likely referring to a Breathalyzer; however, the evidence of record is not clear on that point.

[32] *Id*. at 62.

[33] *See* doc. no. 39-7 (Defendants' Evidentiary Materials in Support of Motion for Summary Judgment), Deposition of James Leonard "Bud" Romine, at 84.  It should be noted that Officers Quinnelly and Pitts deny that they pushed plaintiff into a wall or punched him at any time.

[34] *Id.*

[35] Plaintiff admits that there is not sufficient *evidence* before the court to establish that any pain or injury suffered by him — most notably a torn rotator cuff in his shoulder — was caused or aggravated by being either pushed into a wall or beaten by the officers.  *See* doc. no. 44, at 10.  It is the plaintiff's burden, however, to present *evidence* — not allegations — in opposition to summary judgment, and plaintiff has failed to identify any medical evidence of record (beyond the fact that he reported having been brutalized by the police to several physicians and nurses) to support his allegation that he was actually injured during this altercation with Officers Quinnelly and Pitts.  The court has carefully reviewed the medical evidence of record, and finds that there is no independent

witnesses to the incident.

In this case, a relevant question of material fact — *i.e.*, whether Officers Quinnelly and Pitts threw plaintiff into a wall and beat him with their fists — turns on competing, contradictory deposition testimony from plaintiff and the arresting officers, which this court must construe in a light most favorable to plaintiff.  As such, the court will analyze plaintiff's claims while operating under the assumption that Officers Quinnelly and Pitts shoved plaintiff into a wall and beat him with their fists, but that the force used against plaintiff did not cause him significant injury.[36]

### III.  DISCUSSION

**A.     Plaintiff's Federal Claims**

Officers Quinnelly and Pitts assert the defense of qualified immunity to plaintiff's federal claims.  Qualified immunity offers "complete protection for

medical evidence supporting plaintiff's allegation that he suffered severe injuries as a result of the force used by the police officers.  Accordingly, the court cannot, as plaintiff requests, overlook this gap in the evidence and find, for purposes of construing the "facts" of this case on summary judgment, that plaintiff sustained injuries that were *caused* by defendants.

[36] Being ever mindful that this court must construe any disputed material facts in a light most favorable to plaintiff, *unless* plaintiff's version of events is so "blatantly contradicted by the record [such] that no reasonable jury could believe it," *Scott*, 127 S. Ct. at 1776, this case presents a close call.  On the one hand, the overwhelming weight of the evidence falls in defendants' favor, and the only evidence in support of plaintiff's allegations — that he was shoved into a wall and beaten by Officers Quinnelly and Pitts — is plaintiff's own deposition testimony.  Moreover, it is undisputed that plaintiff was inebriated at the time of his arrest, and that he resisted the officers at every turn. On the other hand, a jury might choose to believe plaintiff's version of events, despite the lack of objective evidence to support his allegations.  Plaintiff contends that the officers purposefully stopped filming and recording audio because they were planning to imminently assault him.  Because there are no video and audio recordings, this court views the facts as plaintiff recounts them in his deposition.

government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *see Anderson v. Creighton*, 483 U.S. 635, 638 (1987), and protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir.2 001).

Because qualified immunity is a defense not only from liability, but also from suit, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted).

As a prerequisite, or condition precedent, for invoking the defense of qualified immunity, the public official "must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1136 (11th Cir. 2007); *see also*, *e.g.*, *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (same); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988) (same).  If the official was not acting within the scope of his discretionary authority, he is not

eligible to claim the benefits of qualified immunity. *See*, *e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Here, it is undisputed that Officers Quinnelly and Pitts were acting within the scope of their discretionary authority. Accordingly, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

Once the burden shifts to a plaintiff, courts apply a two-part test promulgated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), to determine whether qualified immunity is appropriate. *See*, *e.g.*, *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007). The "threshold question" that must be asked by the court is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the answer to that question is "no" — in other words, if no constitutional right would have been violated under the plaintiff's version of the facts — "there is no necessity for further inquiries concerning qualified immunity." *Id.* If, on the other hand, the answer is "yes," then the analysis proceeds to a second step, at which plaintiff must show that the violation was "clearly established." *Id.* "Although the first and second inquiries are logically related, the two inquiries must be conducted in the proper order. [A court] may not assume an answer to the first question in order to avoid difficult constitutional issues." *Skop*, 485 F.3d at 1137 (internal marks and

citations omitted).

Moreover, if the court concludes that no predicate constitutional violation has occurred, there would be no need for further analysis of plaintiff's supervisory liability claims against Rogersville. *See Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred."); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

## 1.  Plaintiff's unlawful arrest claim

Plaintiff's unlawful arrest claim against Officer Quinnelly was dismissed by order of this court on February 14, 2008.[37]  Because, as discussed in margin note 2, *supra*, all claims against Mayor Chandler and Police Chief Barrett are due to be dismissed, plaintiff's unlawful arrest claim remains pending only as to Officer Pitts and the Town of Rogersville.

Count I of the Complaint embodies allegations that plaintiff was deprived of his right to be free from unlawful seizure, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.[38]  Specifically, plaintiff alleges that

---

[37]*See* doc. no. 35 (Memorandum Opinion and Order), at 9.

[38] *See* doc. no. 1 (Complaint), at ¶ 18.

"Quinnelly [and Pitts], acting under color of state law within the meaning of 42 U.S.C. § 1983, stopped plaintiff's vehicle without authority and therefore arrested plaintiff without probable cause."[39]   Plaintiff further alleges that his false arrest was consistent with a "policy and custom" of Rogersville.  This claim is presented through 42 U.S.C. § 1983, a statutory provision that "confers a private federal right of action for damages and injunctive relief against state actors who deprive any citizen or person within the jurisdiction of the United States of 'rights, privileges, or immunities secured by the Constitution and laws.'"  *Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984) (quoting 42 U.S.C. § 1983).  *See also*, *e.g.*, *Monroe v. Pape*, 365 U.S. 167 (1961).[40]

Plaintiff failed to respond, in any manner whatsoever, to defendants' arguments in support of summary judgment on plaintiff's unlawful arrest claim.  Consequently, the court finds that plaintiff has abandoned this claim.  *See*, *e.g.*, *Chapman*, 229 F.3d

---

[39] *Id.*

[40] Section 1983 originally was Section 1 of the Civil Rights Act of 1871, but it "was 'modeled' on § 2 of the Civil Rights Act of 1866, . . . and was enacted for the express purpose of 'enforc[ing] the provisions of the Fourteenth Amendment.'"  *Mitchum v. Foster*, 407 U.S. 225, 238-39 (1972) (citations omitted).  In pertinent part, the statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

at 1027 ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."). *Cf. Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser*, *Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

Nevertheless, and assuming for the sake of argument that plaintiff had not abandoned this claim, Officer Pitts still would be entitled to qualified immunity, because plaintiff's arrest was made lawfully.[41]

In order to overcome the presumption of qualified immunity, plaintiff must demonstrate that his arrest was unlawful, because it was made without probable cause. *See*, *e.g.*, *United States v. Czeck*, 105 F.3d 1235, 1238 (8th Cir. 1997) ("A warrantless arrest in a public place is valid if the arresting officer has probable cause.") (citing, *e.g.*, *United States v. Watson*, 423 U.S. 411, 418 (1976)). *See also Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("The Fourth

---

[41]The following discussion focuses upon Officer Pitts because, as noted above, plaintiff's unlawful arrest claim against Officer Quinnelly was dismissed by order of this court on February 14, 2008. *See* doc. no. 35 (Memorandum Opinion and Order), at 9.

Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause."). The undisputed evidence in this case, even cast in a light most favorable to plaintiff, simply cannot support the conclusion that Officer Pitts lacked probable cause to arrest plaintiff.

Probable cause to effect an arrest exists if, at the moment the arrest was made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested either had committed, or was in the process of committing, an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). *See also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Therefore, "[t]o determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

Prior to detaining plaintiff, Officer Pitts observed plaintiff stop his vehicle within an intersection in clear violation of Alabama Code § 32-5A-137 (making it

illegal to "[s]top, stand or park a vehicle . . . [wi]ithin an intersection").  Ala. Code § 32-5A-137(a)(1)(c) (1975) (1999 Replacement Vol.); *see also* Ala. Code § 32-5A-3 ("It is unlawful and . . . it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this chapter.").  The fact that plaintiff committed this offense is captured on the video evidence of record, and is beyond dispute.  Standing alone, that infraction provided Officer Pitts with probable cause to arrest plaintiff, even though plaintiff was not ultimately charged with that offense.

Moreover, Officer Pitts had probable cause to arrest plaintiff for the offense of driving under the influence of alcohol.  In Alabama, it is a crime for any person to "drive or be in actual physical control of any vehicle while . . . [u]nder the influence of any substance which impairs the mental or physical faculties of such person to a degree which renders him or her incapable of safely driving."  Ala. Code 32-5A-191(a)(5).  Officer Pitts observed plaintiff operating his vehicle in a manner that caused him to suspect that plaintiff might be intoxicated.  Furthermore, plaintiff admitted that he had consumed alcohol prior to driving his automobile.  Once plaintiff refused to either perform field sobriety tests, or submit to a Breathalyzer analysis, Officer Pitts had more than enough probable cause to arrest plaintiff for the offense of driving while intoxicated.  As such, the arrest was lawful, and no violation of plaintiff's constitutional rights occurred.  Officer Pitts is, thus, entitled to qualified

immunity as to plaintiff's unlawful arrest claim.  As a further result, plaintiff cannot maintain a derivative claim against the Town of Rogersville with respect to his allegations of unlawful arrest.  *See Beshers*, 495 F.3d at 1264 n.7.

### 2.    Plaintiff's Fourth Amendment excessive force claim[42]

Plaintiff's Fourth Amendment excessive force claim is premised on two events. Plaintiff contends that Officers Quinnelly and Pitts used "excessive" force, resulting in a violation of his Fourth Amendment right to be free from such force, when the officers "threw" him into the backseat of the police car, and when they pushed him into a wall and beat him with their fists.[43]

The Supreme Court held long ago that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Pivoting off this point, the Eleventh Circuit has repeatedly observed that "'the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.'"  *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir.

---

[42] In Count II of the Complaint, plaintiff alleges that Officers Quinnelly and Pitts violated his Fourteenth Amendment right to be free from excessive force.  Defendants moved for summary judgment as to *all* claims asserted against them, and plaintiff failed to object to summary judgment as to his Fourteenth Amendment excessive force claim, nor does plaintiff expound on this claim in response to defendants' motions.  Accordingly, this court finds that plaintiff has abandoned his Fourteenth Amendment excessive force claim, assuming *arguendo* that such a claim is proper under the facts of this case.   *See, e.g.*, *Chapman*, 229 F.3d at 1027, *supra*.  As such, the court will focus its analysis solely on plaintiff's excessive force claim brought under the Fourth Amendment.

[43] Doc. no. 1 (Complaint), at ¶¶ 14, 16-17.

2003) (quoting *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)).  In *Durruthy*, for instance, the court held that it was not unlawful for a police officer to force an arrestee to the ground prior to handcuffing him, even though such force was arguably unnecessary under the circumstances.  *Durruthy*, 351 F.3d at 1094.

In another case, *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997), the Eleventh Circuit held that police officers acted reasonably when slamming a suspect against a wall and kicking his legs apart prior to frisking him.  *See id*. at 1460.

Finally, in *Nolin*, *supra*, the court held that officers applied mere *de minimis* force when they took hold of a suspect's shoulder and wrist, tossed him against a vehicle a few feet away, put their knees in his back, and pressed his head against the side of the vehicle.  *See* 207 F.3d at 1255.

Although such treatment may seem extreme to the casual reader, "we are not to view the matter as judges from the comfort of our chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts."  *Crosby v. Monroe County*, 394 F.3d 1328, 1333-34 (11th Cir. 2004) (Carnes, J.).

Instead, "[w]e must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove

fatal." *Id.* at 1334. *See also Graham*, 490 U.S. at 396 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are often tense, uncertain, and rapidly evolving — about the amount of force that is necessarily in a particular situation.").

Here, the undisputed evidence shows that plaintiff repeatedly refused to comply with the officers' directives, including the command that he voluntarily enter the backseat of the police car, and that he perform a "balloon test." Both refusals were met with the use of force by the officers.

Insofar as plaintiff contends that being thrown into the backseat of a police car was "excessive," plaintiff ignores that he refused to cooperate with the officers' numerous, lawful requests that he enter the police cruiser of his own accord. Because plaintiff was non-cooperative, and in consideration of the fact that he remained standing outside the police car, he posed a "potential" risk to the officers' safety, and regardless of however minimal his chance of success might have been, he could have attempted to flee on foot. *See Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (noting that when a court is determining whether the force used was reasonable, a court must remain mindful that "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured

by the severity of the crime, the danger to the officer, and the risk of flight"). Also, given plaintiff's intoxicated state at the time of his arrest, he was a risk to his own safety as long as he was outside the police car.

As to the incident in the jailhouse garage, assuming that plaintiff was shoved into the wall and beaten by both Officers Quinnelly and Pitts, the undisputed evidence before the court is that plaintiff was combative, repeatedly resistant to the officers' lawful commands, and inebriated.

Moreover, the "force" employed by Officers Quinnelly and Pitts on both occasions complained of by plaintiff never caused him to fall to the ground, nor is there solid evidence that he suffered any injury of significance.

Given the totality of the circumstances, and drawing on the cases outlined above, the court concludes that Officers Quinnelly and Pitts did not utilize excessive force against plaintiff. Any force applied was *de minimis*.

In seeking to avoid the foregoing conclusion, plaintiff argues that the force used by Officers Quinnelly and Pitts is not *de minimis*, as a matter of law, because he was secured in handcuffs when the force was applied. In support of this contention, plaintiff relies on his interpretation of the Eleventh Circuit's holding in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), a case in which the Court held that a police officer who used force against an individual who was under arrest, who had been

fully secured in handcuffs, who did not resist arrest, and who posed no danger to the arresting officer, was not entitled to qualified immunity. It is the crux of plaintiff's argument that, regardless of the actions of an arrestee, or the situation facing an arresting officer, once an arrestee is placed in handcuffs, the police officer cannot use force against that individual without violating the Fourth Amendment. In making this argument, however, plaintiff glosses over the reality that the present case is factually distinguishable from the circumstances underlying *Lee*, so much so that the holding in *Lee* does not apply to this action. Furthermore, plaintiff's interpretation of *Lee* stretches the reach of that holding too far.

The plaintiff in the *Lee* case, a twenty-nine year old African-American female, was driving home from work on a busy street in Miami, Florida. She encountered a car that was blocking her lane of traffic, and she sounded her horn to signal the vehicle "to go with the flow of traffic." *Lee*, 284 F.3d at 1190. Luis Ferraro, a Miami police officer, was driving in his police cruiser alongside Lee's automobile, and pulled her over for the minor traffic violation of "improper use of her car horn under Section 316.271(1) of the Florida Statutes." *Id.* at 1192. The Eleventh Circuit's summary of the events that then occurred graphically underscores how very different the facts of that case were from those confronting this court in the present action.

> Ferraro, a 6'3", 190 pound male, came to the driver's side window
> and asked "what the hell was wrong" with her [the plaintiff, Kim Lee]

23

and "who the hell [she] thought [she] was," and, before Lee responded, asked for her driver's license.  Lee started to reach down to get the bag containing her license, which was on the floor on the passenger's side of the front seat, asking Ferraro why he pulled her over.  Ferraro responded that "he is the fucking boss around here, he asks all the questions, don't ask him questions, and things of that nature."

Before Lee could reach her bag, Ferraro, who had not asked her to get out of the car, pulled the door open.  He then took out his retractable night stick and "put it in [her] face."  As he did this, according to Lee, "he was saying things to the effect that he should kick my black ass, he is the boss, he can—like just a whole lot of racial—just a lot of words pertaining to—black bitch."  He called her "a fucking black bitch.  He was saying he should kick my fucking ass.  If I was a man, he would kick my ass.  Things like that."  While screaming these words, Ferraro kept his night stick in Lee's face, and she remained seated in the car.

Ferraro then "grabbed" Lee's left wrist and "just pulled [her] out" of the car.  He pulled her with his hand still on her wrist, and then shoved her hand against her back.  As he pulled her out of the car, he said, "You are under arrest."  Once he had her outside the car, Ferraro "shoved" Lee against the car in front of the driver's side door.  Asked if she was shoved "face first against the car," Lee responded "[r]ight, like chest."  At this point, Lee explained, Ferraro "threw my hand on top of the hood and he frisked me, went through my pockets and things like that.  After he was done with that, then he put the handcuffs on."  Notably, she said that after the handcuffs were on and after she was secured, Ferraro "led me to the trunk of my car and slammed my head down onto the trunk and he kept spreading my legs with his foot."  *Lee did not resist Ferraro at any time during this incident*.

*Lee v. Ferraro*, 284 F.3d at 1191 (emphasis supplied, footnote omitted).

After engaging in a *de novo* analysis of Lee's claim of excessive force against

Ferraro, the Eleventh Circuit held that Ferraro was not entitled to qualified immunity.

The Court found that it was "abundantly clear to us that Ferraro used force that was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate. . . ." *Id.* at 1198.   In reaching that conclusion, the Court took several factors into consideration:  (*i*) the Supreme Court's opinion in *Graham v. Connor*, 490 U.S. 386 (1989), generally establishing that "more force is appropriate for a more serious offense and less force is appropriate for a less serious one";  (*ii*) "it is difficult to imagine a less significant crime than honking one's horn on a busy downtown thoroughfare";  (*iii*) no evidence indicated that "Lee posed any threat to the arresting officer *or to anyone else*";  (*iv*) "*there is no indication that Lee actively resisted* or attempted to flee";  (v) there was "no reason, let alone any legitimate law enforcement need," for Officer Ferraro to slam Lee's head into the trunk of her car after she was arrested and secured in handcuffs.  *Id.* (emphasis supplied).

After holding that Ferraro had used "excessive force," the Court found that Ferraro's actions violated a clearly established Fourth Amendment right by "applying the clear and obvious principle that once an arrest has been fully secured and any potential danger or risk of flight vitiated, a police officer simply cannot employ the severe and unnecessary force allegedly used here."  *Id.* at 1200.  *See also Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (stating that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force").

In the present case, plaintiff correctly admits that driving under the influence of alcohol is a more serious crime than the minor traffic offense charged in *Lee*.[44] Furthermore, while the plaintiff in *Lee* did not, at any time, resist the arresting officer, the same cannot be said for this plaintiff, who was resistant and belligerent from his first contact with the officers until the video and audio recordings were terminated. In short, because plaintiff was charged with a serious offense — one that involves a risk of public endangerment — as compared to the minor traffic violation in *Lee*, and because plaintiff resisted arrest, this case is not analogous to *Lee*. In addition, the gratuitous and unprovoked violence perpetrated by the police officer in *Lee* is not akin to the force employed by the officers in this case. Accordingly, plaintiff has not met his burden to show that the facts of the present action are congruous with *Lee*.

Plaintiff seemingly would have this court construe the holding of *Lee* as constituting the following universal rule: once a suspect is placed in handcuffs, the police officers cannot use *any force* on that individual. This court does not so interpret *Lee*, and does not subscribe to plaintiff's unsubstantiated premise that he was no longer a danger to Officers Quinnelly and Pitts — or, for that matter, to himself — simply because he was in handcuffs.

In light of the foregoing finding that no constitutional violation occurred as a result of the force used by Officers Quinnelly and Pitts against plaintiff, the court's

---

[44]Doc. no. 44, at 12.

qualified immunity analysis is at an end.  *See Saucier*, 533 U.S. at 201 ("If no

constitutional right would have been violated were the allegations established, there

is no necessity for further inquiries concerning qualified immunity.").  Both Officers

Quinnelly and Pitts are entitled to qualified immunity as to plaintiff's excessive force

claims.  As such, plaintiff cannot maintain derivative claims against the Town of

Rogersville for the police officers' use of force during plaintiff's arrest.  *See Beshers*,

495 F.3d at 1264 n.7.  Accordingly, defendants' motion for summary judgment is due

to be granted as to plaintiff's excessive force claim.

## B.    Plaintiff's State-Law Claims

Plaintiff's complaint also contains state-law claims that sound in tort.  This

does not present a jurisdictional problem because, in cases where the district court's

jurisdiction was originally based upon the presence of a federal question, the court

also possesses the *discretion* to entertain state claims that are so related to the federal

causes of action that they form a part of the same case or controversy under Article

III of the United States Constitution.  *See* 28 U.S.C. § 1367(a).[45]  The district court

---

[45] In full, this statutory subsection provides that:

> (a) Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts have
> original jurisdiction, the district courts shall have supplemental jurisdiction over all
> other claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under Article III of
> the United States Constitution. Such supplemental jurisdiction shall include claims
> that involve the joinder or intervention of additional parties.

may, however, decline to exercise supplemental jurisdiction when:

> (1)   the claim raises a novel or complex issue of State law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Supreme Court added a gloss to this statutory language in

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), when observing that

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant [now called "supplemental"] state-law claims.

*Id*. at 349-50 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966)).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [now supplemental] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon*, 484 U.S. at 350 n.7.

---

28 U.S.C. § 1367(a).

Here, the court has dismissed all federal claims over which it had original jurisdiction.   The court declines to exercise supplemental jurisdiction over the remaining state law claims, which will require the court to address complex questions of "discretionary function immunity" under Alabama law.

### IV.  CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are due to be granted to the extent that they seek judgment as to plaintiff's federal claims. Having disposed of all federal claims, the court will dismiss plaintiff's state law claims, but without prejudice to plaintiff's right to re-assert those claims in a state forum.  Accordingly, insofar as defendants' motions for summary judgment also seek judgment as to plaintiff's state law claims, they are due to be denied.   An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 9th day of January, 2009.

_____
United States District Judge